IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-167-BO

| | | |
|---|---|---|
| SAMANTHA FASUL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on cross motions for summary judgment, among other motions. Plaintiff moved for partial summary judgment asking the Court to nullify and invalidate an insurance appraisal award. [DE 33]. Defendant responded, contemporaneously moving for complete summary judgment. [DE 36]. Plaintiff responded [DE 40], and defendant replied [DE 42]. The Court also considers plaintiff's motion to amend the scheduling order [DE 38] and defendant's motion [DE 45] to strike expert declarations offered in support of plaintiff's motion for summary judgment. A hearing was held before the undersigned on September 11, 2025 in Elizabeth City, North Carolina. In this posture, the motions are ripe for disposition. For the following reasons, plaintiff's motion for partial summary judgment is granted and defendant's motion for summary judgment is denied.

BACKGROUND

This insurance dispute arises from the damage Hurricane Florence caused in September 2018 to plaintiff's waterfront home in Wrightsville Beach, North Carolina. Defendant Nationwide, plaintiff's insurer, denied coverage for damage to her personal property. Plaintiff also disagreed

with Nationwide's determination of the amount of loss related to her dwelling, and this matter was stayed pending an appraisal related to the dwelling coverage.

Defendant Nationwide's adjuster, Ryan Roach, had initially estimated the replacement cost value (RCV), meaning the total cost of plaintiff's home repairs, at $210,364.73. [DE 34-5, p. 60]. Roach's supplement reflects an estimated $10,681.75 for replacement of her electrical system, *id.* at p. 10, line 265, and $10,320.00 for replacement of the HVAC system, *id.* at p. 11, line 272. Dissatisfied with Nationwide's estimate, plaintiff demanded appraisal. N.C.G.S. § 58-44-16(f)(14) describes the appraisal process:

> If the insured and this insurer fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days after the demand. The appraisers shall first select a competent and disinterested umpire . . . The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit only their differences to the umpire. An award in writing, so itemized, of any two when filed with this insurer shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

N.C.G.S. § 58-44-16(f)(14).

Plaintiff designated Dan Wilcox as her appraiser, and defendant selected Harrison Jones; the two appraisers agreed that David Bonanni would serve as the umpire. Wilcox presented an RCV estimate of $417,350.01 on plaintiff's behalf, and Jones presented an RCV estimate of $156.917.75 for defendant. The appraisers agreed on certain entries within their respective assessments, such as the dimensions of much of the drywall, floor covering, and other interior finishes that required removal or replacement. They disagreed, however, on the replacement costs for plaintiff's HVAC and electric systems. Wilcox had estimated $19,988.46 in total electric costs [DE 34-6, p. 4] and $27,425.23 for HVAC costs, *id.* at pp. 4–5, and Jones for defendant had estimated $0 for their total replacement cost.

2

Despite the substantial difference between their figures, the appraisers did not "submit only their differences to the umpire" as N.C.G.S. § 58-44-16(f)(14) prescribes. [DE 34-12, p. 81]. Umpire Bonnani reviewed both full appraisals on Xactimate software, compiled each line item into his own Excel spreadsheet to compare between them and reach a decision, recorded his result, and closed the Excel spreadsheet without saving it. *Id.* at pp. 22–25. Umpire Bonnani and appraiser Jones endorsed an award of $171,173.75 in replacement cost value for plaintiff's dwelling, with an up-front actual cash value of $138,335.32. [DE 34-8]. The appraisal award is significantly less than even Nationwide's initial adjuster, Ryan Roach, estimated. Plaintiff now asks the Court to invalid the appraisal award.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect

3

the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted).

## I. Plaintiff's Motion for Partial Summary Judgment Invalidating the Appraisal

Plaintiff contends the appraisal award is invalid because the appraisal panel impermissibly considered issues of causation and coverage in reaching the award, as evidenced by the award's omission of HVAC and electric replacement or repair costs. "North Carolina law does not empower appraisers to make causation or coverage determinations." *Glendale LLC v. Amco Ins. Co.*, No. 3:11-CV-3-RJC-DCK, 2012 WL 1394746, at *4 (W.D.N.C. Apr. 23, 2012) (citing *High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 634 (4th Cir. 1997)). For example, in "Glendale, following a fire at an insured restaurant, the appraisers 'excluded repairs for some amount [of] damage to the restaurant based on their belief that some damage was caused by [p]laintiff's neglect of the charred restaurant rather than directly by the fire and that the [p]olicy excluded such damages.'" *New Bern Golf & Country Club, Inc. v. Underwriters at Lloyd's London*, No. 4:19-CV-151-BR, 2020 WL 1958631, at *3 (E.D.N.C. Apr. 23, 2020) (alterations in original) (citing *Glendale*, 2012 WL 1394746). While the Glendale court acknowledged "it may be appropriate for appraisers to exclude conditions present before a covered event," it found appraisers could not permissibly decide "how much of the deterioration resulted from a covered cause and how much came from an uncovered cause." *Id.*

Accordingly, the appraisal clause in plaintiff's policy states, "[i]n no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy." [DE 34-17, p. 2]. In other words, the Court should find the appraisal invalid if the umpire and defendant's appraiser considered issues of causation or coverage in determining their award. *See id.*

4

Umpire Bonnani and appraiser Jones deny having considered causation or coverage issues. [DE 34-12, p. 127]; [DE 37-12, p. 4, ¶ 7]. As plaintiff explains, however, the "HVAC and Electrical systems were inarguably saturated by a covered hurricane event, then sat unused (and without power) in Ms. Fasul's storm-damaged home for five years." [DE 34, p. 15]. By the time the appraisal panel examined plaintiff's home, it had been four years since the HVAC and electric systems had been operated. There can be no genuine dispute that the HVAC and electric systems, by that time, had fallen into some disrepair, such that the repair cost would not be zero. A reasonable jury could only conclude, therefore, that much like the appraisal panel in *Glendale*, the umpire and defendant's appraiser omitted HVAC and electric costs from their award because they had impermissibly determined those systems' deterioration resulted from a non-covered cause. The appraisal award is invalid.

## II. Other Motions

As the Court does not rely on the declarations of James Chen and Steve Stone, defendant's motion to strike [DE 45] their declarations is denied as moot. The Court has considered defendant's motion for summary judgment [DE 36] and has determined that issues of material fact prevent entry of summary judgment.

Plaintiff moved to amend the scheduling order [DE 38] so that she can amend her complaint to assert new claims based on bad faith. Plaintiff originally filed this lawsuit to preserve her claims against the approaching statute of limitations deadline. *Id.* at ¶ 1. At the time she initiated this case, Nationwide had made no final coverage or payment decisions. *Id.* at ¶ 2. The scheduling order provides an August 1, 2024 cutoff for plaintiff to seek leave to amend pleadings. [DE 30, ¶ 2]. Plaintiff argues she should be granted leave to amend because she received Nationwide's formal

denial of coverage for her personal property claim only in February of 2025 [DE 38, ¶ 11], after the deadline to seek leave to amend her complaint had passed.

Nationwide responded in opposition and attached a letter from defendant's counsel to plaintiff's counsel, dated September 27, 2021, which states, "please be advised that Nationwide Mutual Fire Insurance Company is denying any claim that Ms. Fasul believes she has regarding personal property damage arising out of the Hurricane Florence loss[.]" [DE 39-1, p. 3]. While this was not a formal denial of coverage, it put plaintiff on sufficient notice that her claim would be denied such that she had an opportunity to plead her bad faith claims arising from that denial. The motion for leave to amend the scheduling order so that plaintiff can assert new claims is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment [DE 33] is GRANTED. Defendant's motion for summary judgment [DE 36] is DENIED. Plaintiff's motion to amend the scheduling order [DE 38] is DENIED. Defendant's motion to strike [DE 45] the affidavits of Chen and Stone is DENIED as MOOT. The Court anticipates setting the case for trial in its June 2026 term. This action is REFERRED to United States Magistrate Judge Brian S. Meyers to conduct a pretrial conference.

SO ORDERED, this 20 day of May 2026.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

6